[No. S097765. Aug. 22, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTURO GARCIA, Defendant and Appellant.

In re ARTURO GARCIA on Habeas Corpus.

## COUNSEL

Maxine Weksler, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Marc E. Turchin, Acting Assistant Attorney General, Carol Wendelin Pollack and Pamela C. Hamanaka, Assistant Attorneys General, Mary E. Sanchez, Darryl C. Hottinger and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), George M. Palmer, Head Deputy District Attorney, and Phyllis C. Asayama, Deputy District Attorney, for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**CHIN, J.**—We granted review to decide whether convictions for two defendants must support a firearm sentencing enhancement for one of them.

Under Penal Code[1] section 12022.53, subdivision (d), a defendant convicted of a qualifying felony who intentionally and personally discharges a firearm, proximately causing great bodily injury or death, is subject to an additional term of 25 years to life. In this case, we must decide whether this enhancement applies to an aider and abettor if the shooter is not convicted. Contrary to the Court of Appeal, we conclude that a shooter's conviction is not required to impose vicarious liability. Thus, we reverse the Court of Appeal's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In a drive-by shooting, Juan Fernando Galeana, a member of the Burbank Trece street gang, was shot and killed. Salvador Morales, a member of the Vineland Boys (related to the Sun Valley Diablos street gang), later bragged to his friend and fellow gang member, Sergio Arriola, that he was the shooter and that defendant Arturo Garcia, also part of the Vineland Boys, was the driver. Arriola told the police what Morales said, but later changed his story after he was beaten up. Defendant told the same story to another fellow gang member, who informed the police. At the time of his arrest, defendant admitted his involvement in Galeana's murder and later gave the police a full confession.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Both defendant and Morales were charged with Galeana's murder. (§ 187, subd. (a).) As relevant here, the information included sentence enhancements alleging that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1) & (4)), and that a principal discharged a firearm in committing the murder. (§ 12022.53, subd. (d).) The information also included a firearm discharge allegation against defendant (§ 12022.53, subd. (d)), though he was not the alleged shooter. (See § 12022.53, subd. (e)(1).)

Following a court trial, defendant was convicted of second degree murder (§ 187, subd. (a)), for aiding and abetting in the killing of Galeana. As to defendant, the trial court found true the allegations under sections 186.22 and 12022.53, subdivision (d). Defendant's 15-year-to-life sentence was increased by 25 years to life pursuant to the section 12022.53 enhancement. Morales, the alleged shooter, was acquitted of all charges. The evidence against defendant showed that he was *not* the shooter.

Defendant appealed. He argued that the People failed to prove all the elements supporting the section 12022.53 enhancement. Defendant argued that although he was an aider and abettor and not the shooter, the firearm enhancement could apply to him only if allegations under sections 12022.53, subdivision (d), and 186.22 were "pled and proved." (§ 12022.53, subd. (e)(1).) However, because Morales was acquitted and there was no evidence that defendant was the shooter, no person stood "*convicted* of a felony . . . , and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused . . . death." (§ 12022.53, subd. (d), italics added.) Thus, section 12022.53, subdivision (e)(1)'s, requirement, imposing vicarious liability on aiders and abettors, was not met.

Agreeing with defendant, the Court of Appeal reversed the finding on the section 12022.53 enhancement. In order to impose vicarious liability for an aider and abettor who is not the shooter, section 12022.53, subdivision (e)(1), requires that allegations under both sections 12022.53, subdivision (d), and 186.22 be pleaded and proved. The Court of Appeal found that the section 12022.53, subdivision (d), allegation was not proved here. Although there was evidence that defendant was a principal involved in Galeana's murder, there was no evidence that either Morales or defendant was "convicted" of that murder by "intentionally and personally discharg[ing] a firearm." (§ 12022.53, subd. (d).) The Court of Appeal denied defendant's petition for a writ of habeas corpus.

We granted the Attorney General's petition to review whether section 12022.53 permits imposing this enhancement on an aider and abettor only if the perpetrator has been convicted of the same.

## DISCUSSION

### A. *Applicable statutes*

Enacted in 1997 as part of the so-called 10-20-life bill (Assem. Bill No. 4 (1997-1998 Reg. Sess.)), section 12022.53 imposes sentence enhancements for firearm use applicable to certain enumerated felonies. (§§ 12022.53, subd. (a)(1)-(18), 246, subds. (c), (d); see Stats. 1997, ch. 503, § 3.) These enhancements vary in length, corresponding to various uses of a firearm.[2] At issue here, subdivision (d) of section 12022.53 adds a consecutive 25-year-to-life term if a person convicted of a felony enumerated in "subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, . . . in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury . . . or death . . . ."

Section 12022.53, subdivision (e)(1), imposes vicarious liability under this section on aiders and abettors who commit crimes in participation of a criminal street gang. (*People v. Gonzales* (2001) 87 Cal.App.4th 1, 11-12 [104 Cal.Rptr.2d 247].) "The enhancements specified in this section shall apply to any person charged as a principal[3] in the commission of an offense that includes an allegation pursuant to this section when a violation of both this section and subdivision (b) of Section 186.22 are pled and proved." (§ 12022.53, subd. (e)(1).)[4] In turn, section 186.22, part of the Street Terrorism Enforcement and Prevention Act (STEP Act), imposes a sentence enhancement or increased penalty for any person who is convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1) & (4); see *People v. Jefferson* (1999) 21 Cal.4th 86, 100-101 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

---

[2]Section 12022.53, subdivision (b), provides that a person convicted of a specified felony, who "in the commission of that felony personally used a firearm," shall be subject to an additional and consecutive 10-year term. Subdivision (c) of section 12022.53 increases the enhancement to an additional and consecutive 20-year term if the person "in the commission of that felony intentionally and personally discharged a firearm."

[3]"Principal" includes not only those persons who directly commit the act, but also aiders and abettors. (§ 31.)

[4]On July 9, 2002, the Governor approved and the Secretary of State chaptered legislation amending section 12022.53, subdivision (e)(1), as follows: "The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)." (Stats. 2002, ch. 126, § 4.) Effective January 1, 2003, the enacted legislation "rewrites this provision without changing its substance. Arguably, as rewritten by this bill, the vicarious application of the '10-20-life' enhancement in gang cases is significantly easier to read." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2173 (2001-2002 Reg. Sess.) June 18, 2002, p. H.)

■ The legislative intent behind section 12022.53 is clear: "The Legislature finds and declares that substantially longer prison sentences must be imposed on felons who use firearms in the commission of their crimes, in order to protect our citizens and to deter violent crime." (Stats. 1997, ch. 503, § 1.) With respect to aiders and abettors, one Court of Appeal has observed that section 12022.53, subdivision (e)(1), "is expressly drafted to extend the enhancement for gun use in any enumerated serious felony to gang members who aid and abet that offense in furtherance of the objectives of a criminal street gang." (*People v. Gonzales, supra,* 87 Cal.App.4th at p. 15.) This subdivision provides a "clear expression of legislative intent" (*ibid.*) to "severely punish aiders and abettors to crimes by a principal armed with a gun committed in furtherance of the purposes of a criminal street gang. It has done so in recognition of the serious threats posed to the citizens of California by gang members using firearms." (*Id.* at p. 19.)

### B. *Statutory interpretation*

■ In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. (*People v. Tindall* (2000) 24 Cal.4th 767, 772 [102 Cal.Rptr.2d 533, 14 P.3d 207].) We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. (*Ibid.*) If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. (*Ibid.*) "However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

### C. *Court of Appeal's interpretation*

■ The Court of Appeal adopted what it considered a plain meaning of section 12022.53. Because neither Morales nor defendant was actually convicted of intentionally and personally discharging a firearm, the express requirements of section 12022.53, subdivision (d), were not met. Thus, defendant could not be vicariously liable as an aider and abettor under the enhancement. (§ 12022.53, subd. (e)(1).) The Court of Appeal rejected the People's argument that "it was extremely clear that *someone* personally and intentionally discharged the firearm which killed Mr. Galeana, and that should be sufficient so long as the other requirements of section 12022.53, subdivision (e)(1), are satisfied."

As explained below, we disagree with the Court of Appeal's interpretation.

D. *Analysis*

Section 12022.53, subdivision (d), provides that a defendant who is "convicted of [an enumerated felony], and who in the commission of that felony intentionally and personally discharged a firearm and proximately caused great bodily injury, . . . or death, to any person other than an accomplice, shall be punished by a term of imprisonment of 25 years to life in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony." Applied to a defendant/shooter, this enhancement is arguably unambiguous: a defendant who is convicted of a specified felony and is found to have intentionally and personally discharged a firearm proximately causing great bodily injury or death when committing that felony, is subject to section 12022.53, subdivision (d). (*People v. Martinez* (1999) 76 Cal.App.4th 489, 493 [90 Cal.Rptr.2d 517].) However, as applied to an aider and abettor, section 12022.53, subdivision (d), is not as clear. (§ 12022.53, subd. (e)(1).) The ambiguity stems, in part, from the vicarious nature of an aider and abettor's liability.

█ "The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120 [108 Cal.Rptr.2d 188, 24 P.3d 1210].) In certain circumstances, an aider and abettor may be guilty of a more serious offense than an actual perpetrator. (*Ibid.*)

█ Because section 12022.53, subdivision (e)(1), does not set forth the specific requirements for an aider and abettor's liability, but implicitly makes cross-references to subdivisions (b), (c), and (d), the potential for confusion exists. By strictly construing the term "convicted" (§ 12022.53, subd. (d)), however, the Court of Appeal failed to consider the distinctive nature of an aider and abettor's liability. Because an aider and abettor may potentially be guilty of a more serious offense than the shooter (see *People v. McCoy, supra,* 25 Cal.4th at p. 1120), the absence of a shooter's conviction is not dispositive of the aider and abettor's exposure to liability. We see no basis to depart from this general principle of aider and abettor liability with respect to section 12022.53, subdivisions (d) and (e)(1), especially when the Legislature has expressed its clear intent to punish aiders and abettors in this context. (See *People v. Gonzales, supra,* 87 Cal.App.4th at p. 15.)

We agree with the Attorney General that the term "convicted" (§ 12022.53, subd. (d)), refers to the procedural prerequisite of a defendant's

conviction, which must occur before imposing an enhancement. ■ " '[A] defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. [Citation.]' " (*People v. Dennis* (1998) 17 Cal.4th 468, 500 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; see also *People v. Wims* (1995) 10 Cal.4th 293, 307 [41 Cal.Rptr.2d 241, 895 P.2d 77].) In fact, supporting this statement, we have noted parenthetically, "[s]ee, e.g., section 12022 [, subdivision] (b), enhancing sentence only 'upon conviction . . . .' " (*Wims, supra,* 10 Cal.4th at p. 307.) As amicus curiae California District Attorneys Association observes, various enhancement provisions include the term "conviction" or "convicted." (See, e.g., §§ 12021.5, 12022.2, 12022.4, 12022.5, 12022.55, 12022.7, 12022.75.) ■ This tends to support the view that the term's inclusion in these provisions, as in section 12022.53, refers to a procedural prerequisite, and does not suggest an additional element for pleading and proof.

We conclude that in order to find an aider and abettor—who is not the shooter—liable under section 12022.53, subdivision (d), the prosecution must plead and prove that (1) a principal committed an offense enumerated in section 12022.53, subdivision (a), section 246, or section 12034, subdivision (c) or (d); (2) a principal intentionally and personally discharged a firearm and proximately caused great bodily injury or death to any person other than an accomplice during the commission of the offense; (3) the aider and abettor was a principal in the offense; and (4) the offense was committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§§ 186.22, subd. (b)(1) & (4), 12022.53, subd. (e)(1).) Although the aider and abettor must first be convicted of the underlying offense before the enhancement may apply (*People v. Dennis, supra,* 17 Cal.4th at p. 500), the prosecution need not plead and prove the *conviction* of the offense by the principal who intentionally and personally discharged a firearm.

Contrary to the Court of Appeal's suggestion, the issue here is not *whether* the enhancement elements for vicarious liability are contained in section 12022.53, subdivision (b), (c) or (d), but exactly *what* elements are required. In that regard, section 12022.53, subdivisions (f) through (j), provide very little, if any, substantive support for the Court of Appeal's interpretation. Unlike section 12022.53, subdivision (e), subdivisions (f) through (j) do not concern vicarious liability, nor do they shed light on the substantive requirements for subdivision (b), (c) or (d). Rather, these subdivisions simply set forth procedural requirements (§ 12022.53, subds. (f), (h)), probation eligibility (§ 12022.53, subd. (g)), and limitations on term credits (§ 12022.53, subd. (i)).

Unlike the Court of Appeal, we do not find that section 12022.53, subdivision (j), compels a contrary result. To impose an additional term under section 12022.53, subdivision (j), "the existence of any fact required under subdivision (b), (c), or (d) shall be alleged in the information or indictment and either admitted by the defendant in open court or found to be true by the trier of fact." Based on this subdivision, the Court of Appeal found it "[q]uite plain[]" that in order "for a principal to be vicariously liable under subdivision (e), proof of the elements of subdivision (b), (c), or (d) is required." The Court of Appeal, however, misconstrues the word "convicted" as an additional element, or fact, of subdivision (d). (See *ante*, at pp. 1173-1174.) We agree with amicus curiae that subdivision (j) is simply a restatement of section 1170.1, subdivision (e), which provides that "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

We are not persuaded that the "pled and proved" language of section 12022.53, subdivision (e)(1), supports the Court of Appeal's strict construction of subdivision (d). Focusing on the term "proved," defendant asserts that only through the shooter's *conviction* may the prosecution prove that the principal intentionally and personally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d).) We disagree. Section 12022.53, subdivision (e)(1), merely sets forth the general requirements of pleading and proof for sentencing enhancements. (See *People v. Hernandez* (1988) 46 Cal.3d 194, 197, 208 [249 Cal.Rptr. 850, 757 P.2d 1013].) There is no indication the Legislature intended that only a conviction may satisfy the proof requirement for firearm enhancements such as section 12022.53. Indeed, the case law is to the contrary. (See, e.g., *People v. Dominguez* (1995) 38 Cal.App.4th 410, 421 [45 Cal.Rptr.2d 153] [sufficiency of evidence for firearm use under § 12022.5]; *People v. Camacho* (1993) 19 Cal.App.4th 1737, 1747 [24 Cal.Rptr.2d 286] [sufficiency of evidence for firearm use under §§ 12022, 12022.3, 12022.53].) By requiring the conviction of the actual shooter as proof for vicarious liability, defendant's interpretation would impose an additional element for aiders and abettors than for shooters under section 12022.53, subdivision (d). As we shall explain, we discern no clear intent justifying this distinction.

 ██ ██ In support of his interpretation, defendant relies on press releases and letters to and from the authoring legislator, memoranda, legislative digest extracts, committee reports, and analyses of Assembly Bill No. 4 (1997-1998 Reg. Sess.).[5] He argues that nothing in these documents identifies particular or special concerns regarding gang members.

---

[5]We grant both defendant's and the Attorney General's requests to take judicial notice of certain legislative history documents of section 12022.53. However, we deny defendant's

Describing the vicarious liability provision (§ 12022.53, subd. (e)(1)) as an "afterthought," defendant posits that nothing in section 12022.53's legislative history reveals why, when, and by whom subdivision (e)(1) was added. As such, he asserts it is not unreasonable that the Legislature would require heightened proof (in the form of a conviction) with respect to gang members who are not the shooters.

We disagree. Section 12022.53, subdivision (e)(1), expressly extends liability to aiders and abettors to crimes by a principal armed with a gun, for crimes committed in furtherance of the purposes of a criminal street gang. Its legislative history clearly reveals that this was the Legislature's intent. "[A]ccomplice ('principal') liability is excluded, with one exception. If a violation of the [STEP] Act is pled and proved, accomplice liability is permitted. For example, if a criminal street gang is involved all principals to the felony may have the 10-20-Life penalties imposed upon them, not merely the defendant who personally used, discharged, or inflicted great bodily injury." (Off. of Crim. Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 4 (1997-1998 Reg. Sess.) Sept. 18, 1997, p. 2.) With respect to *why* section 12022.53, subdivision (e)(1), was added, we agree with the *Gonzales* Court of Appeal that this provision recognizes "the serious threats posed to the citizens of California by gang members using firearms." (*People v. Gonzales, supra*, 87 Cal.App.4th at p. 19.) In this context, we fail to see the importance of the questions *when* and *by whom* the provision was added.

Defendant argues that "prosecutors are inviting this court to write out of section 12022.53 a key element proving an intentional shooting so that the prosecutors can avoid their problems of proof." Not so. Our holding today does not relieve the prosecution from pleading and proving that a principal intentionally and personally discharged a firearm proximately causing great bodily injury or death (§ 12022.53, subd. (d)), or from other requirements under section 12022.53, subdivision (e)(1). We hold only that a shooter's conviction is not required as proof of the firearm allegation. In that regard, we reject defendant's contention that our interpretation would permit what he calls "strict accomplice liability."

Defendant also seeks support in section 12022, subdivision (a)(1), the one-year firearm enhancement. This section provides that "[t]his additional

request to take judicial notice of the authoring legislator's press releases and letters. "In construing a statute we do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it. [Citations.]" (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 726-727 [80 Cal.Rptr.2d 506, 968 P.2d 65].) We also deny defendant's request to take judicial notice of a memorandum from a Contra Costa deputy district attorney to proponents of Assembly Bill No. 4 (1997-1998 Reg. Sess.). (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 906 P.2d 1057].)

term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, *whether or not the person is personally armed with a firearm.*" (§ 12022, subd. (a)(1), italics added.) The italicized portion, defendant contends, indicates that had the Legislature intended that no personal use allegation was required under section 12022.53, it only had to say what it did in section 12022, subdivision (a)(1). In contrast, the Attorney General maintains that the vicarious liability language in both section 12022, subdivision (a)(1), and section 12022.53 is not "significantly distinct in their language and scope," and should be interpreted similarly.

There is no dispute that an aider and abettor need not personally use or discharge a firearm to be liable under section 12022.53. (§ 12022.53, subd. (e)(1).) The issue here is whether a shooter's *conviction* is a prerequisite for vicarious liability. Section 12022, subdivision (a)(1), though it permits vicarious liability, does not address what level of proof is sufficient for the firearm allegation. As such, we do not find that section 12022, subdivision (a)(1), sheds much light on the present issue.

The Court of Appeal's interpretation would lead to anomalous results and would frustrate the Legislature's apparent purpose in section 12022.53, subdivision (e)(1). If a shooter's conviction is required to impose vicarious liability on an aider and abettor, this restriction may unduly thwart the prosecution of defendants involved in gang-related shootings. For instance, if the actual shooter were also killed during an exchange of gunfire (therefore making a conviction impossible), the aider and abettor would escape liability under section 12022.53, subdivision (d), notwithstanding undisputed evidence that someone intentionally and personally discharged a firearm proximately causing death. Indeed, under the Court of Appeal's interpretation, aiders and abettors would have an incentive *not* to identify a shooter in a gang-related shooting because without the latter's conviction, aiders and abettors would not be exposed to longer sentences under section 12022.53.

As a procedural matter, the prosecution may also face an undue burden if required to prosecute and convict a shooter prior to an aider and abettor. The Attorney General observes that defendants in gang-related shootings may seek to manipulate the order of trials through unnecessary motions and discovery requests to ensure that an aider and abettor is tried before the shooter. Under the Court of Appeal's interpretation, this potential procedural maneuver would create a windfall for aiders and abettors, allowing them to escape liability under section 12022.53. Moreover, there is no indication the Legislature did not intend section 12022.53 to apply because a shooter's identity is unknown, or the shooter is at large. In short, we agree with the

Attorney General that the Legislature did not intend to relieve principals from section 12022.53 liability simply because a shooter/defendant has been acquitted, has yet to be convicted, or is unavailable for prosecution.

■ Finally, as a general matter, we emphasize that " '[t]he fact that certain defendants may escape conviction for their crimes is not any legal or logical reason why another defendant, where substantial evidence has been introduced to sustain his conviction, should be exonerated and be permitted to escape punishment for his crime.' [Citation.]" (*People v. Palmer* (2001) 24 Cal.4th 856, 861 [103 Cal.Rptr.2d 13, 15 P.3d 234].) ■ We conclude these considerations weigh against adopting the Court of Appeal's interpretation.

### DISPOSITION

We reverse the Court of Appeal's judgment, and remand the cause for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.