# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B242710 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA088341) |
| v. | |
| LUIS MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Luis Martinez, of first degree murder (Pen. Code, § 187, subd. (a)) [1] committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)).  The jury further found a principal in the commission of the offense personally and intentionally discharged a firearm proximately causing the victim's death. (§ 12022.53, subds. (d), (e)(1).)  Defendant was sentenced to 50 years to life in state prison.

Defendant was one of nine people charged with the murder.  He did not directly perpetrate the murder.  He was convicted as an aider and abettor.  One theory of criminal liability was that the murder was a natural and probable consequence of the target offense of an assault with force likely to cause great bodily injury.  Defendant was alleged to have aided and abetted in the aggravated assault, the target offense.  On appeal, defendant argues the jury should have been required to find that the willful, deliberate and premeditated aspect of murder was a reasonably foreseeable consequence of the aggravated assault.  In this regard, defendant argues the jury should have been so instructed.  And defendant argues the jury should have been required to find willful, deliberate and premeditated murder was a natural and probable consequence of the aggravated assault, the target offense.  This issue is presently before our Supreme Court. We conclude the jury was properly instructed.  We affirm the judgment.

# II.  THE EVIDENCE

Marquise Le Blanc attended a party in Pomona on April 17, 2009.  Mr. Le Blanc was a 17-year-old African-American man.  With few exceptions, the roughly 60 other partygoers were young Hispanic men and women.  Several of the Latinos in attendance

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

were members or associates of a gang. A certain sect of the gang was known by a Spanish term meaning African-American killers. They were motivated by a hatred of African-Americans. During the party, Mr. Le Blanc suffered a vicious, brutal beating. Mr. Le Blanc was outnumbered during the attack as much as 25 to 1. He was repeatedly chased and knocked to the ground. He was brutally beaten with fists, feet, and a wooden board. He was repeatedly stomped on. His assailants continued to beat him even after he lost consciousness. One eyewitness testified, "[They were] just beating the life out of him." Mr. Le Blanc died of a fatal stab wound to his heart, followed by a fatal gunshot wound to his head. Defendant participated in the aggravated assault. Defendant did not, however, personally stab or shoot Mr. Le Blanc.

## III. DISCUSSION

### A. The Natural And Probable Consequences Doctrine

As noted above, one of the prosecution's theories was that defendant aided and abetted an aggravated assault and murder was a natural and probable consequence thereof. Aider and abettor liability on a natural and probable consequences theory is to a degree vicarious in nature. (*People v. Garcia* (2002) 28 Cal.4th 1166, 1173; *People v. Croy* (1985) 41 Cal.3d 1, 12.) As our Supreme Court explained in *People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117: "'All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.' (Pen. Code, § 31; see *People v. Mendoza* (1998) 18 Cal.4th 1114, 1122-1123; *People v. Prettyman* (1996) 14 Cal.4th 248, 259-260.) Thus, a person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts. (*Ibid.*) Because aiders and abettors may be criminally liable for acts not their own, cases have described their liability as 'vicarious.' (E.g., *People v. Croy*[, *supra,*] 41 Cal.3d [at p.] 12, fn. 5.) This description is accurate as far as it goes. But . . . the aider and abettor's guilt for the

3

intended crime is not entirely vicarious. Rather, that guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state. [¶] It is important to bear in mind that an aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' (*People v. Prettyman, supra,* 14 Cal.4th at p. 260.) Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder even if unintended, if it is a natural and probable consequence of the intended assault. (*Id.* at p. 267.)"

The test for aider and abettor liability is an objective one. As our Supreme Court explained in *People v. Medina* (2009) 46 Cal.4th 913, 920: "'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. (*People v. Prettyman*[*, supra,*] 14 Cal.4th [at pp.] 260-262.)' (*People v. Mendoza*[*, supra,*] 18 Cal.4th [at p.] 1133.) Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 535.)" (Accord, *People v. Favor* (2012) 54 Cal.4th 868, 874.)

4

B.  First Degree Murder As A Natural And Probable Consequence Of Aiding And Abetting An Assault With Force Likely To Cause Great Bodily Injury

1.  Instructions and controlling legal principles

The jury was instructed on the natural and probable consequences of aiding and abetting an assault as follows:  "To prove that the defendant is guilty of murder or the lesser included crime of voluntary manslaughter based on a theory of natural and probable consequences of aiding and abetting an assault with force likely to cause great bodily injury, the People must prove that:  [¶]  1.  The defendant is guilty of assault with force likely to cause great bodily injury;  [¶]  2.  During the commission of assault with force likely to cause great bodily injury a coparticipant in that crime committed the crime of murder or voluntary manslaughter;  [¶]  AND  [¶]  3.  Under all of the circumstances, a reasonable person in the defendant's position would have known *that the commission of the murder* or voluntary manslaughter *was a natural and probable consequence* of the commission of the assault with force likely to cause great bodily injury.  [¶]  A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator.  It does not include a victim or innocent bystander.  [¶]  A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.  If the murder or voluntary manslaughter was committed for a reason independent of the common plan to commit the assault with force likely to cause great bodily injury, then the commission of murder or voluntary manslaughter was not a natural and probable consequence of assault with force likely to cause great bodily injury."  (Italics added.)

During deliberations, the jury inquired, "Difference between being accomplice to murder vs. murder; aiding & abetting same as murder?"  The trial court advised the jury, "Frankly, I didn't understand what the question was."  The juror who posed the question explained that he wanted to know why the verdict form said guilty of murder but not

5

aiding and abetting. The trial court explained that a person who aids and abets a crime is guilty of the offense aided and abetted; aiding and abetting is a theory of liability for a particular crime. Therefore, the verdict form would indicate guilt of the crime rather than guilt of aiding and abetting the crime. The trial court stated in part: "[A]s I understood your question, there is no charge of aiding and abetting. You're not going to get a verdict that says, 'We find you guilty of aiding and abetting' a particular crime. The only verdict form will say, 'We find you guilty or not guilty of the crime.' See, it's not—aiding and abetting is a theory of criminal liability. It is not in itself a crime." The jurors indicated the trial court had answered their question and they understood.

As noted above, the jury was instructed it could find defendant guilty of murder if the homicide was a natural and probable consequence of the aggravated assault. This issue is presently before our Supreme Court in *People v. Chiu* (C063913, April 23, 2012) 2012 WL 1383596 [nonpub. opn.], review granted August 15, 2012, S202724. In *Chiu,* the Court of Appeal for the Third Appellate District held, "[T]he instructions were deficient because they failed to inform the jury it needed to decide whether first degree murder, rather than just 'murder,' was a natural and probable consequence of the target offense." (*People v. Chiu, supra,* 2012 WL 1383596, * 9].) Our Supreme Court granted review to consider the following issue, "Does a conviction for first degree murder as an aider and abettor under the natural and probable consequences doctrine require that premeditated murder have been a reasonably foreseeable consequence of the target crimes or only that murder have been such consequence?" (<http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist+0&doc_id=2014866&doc_no=S202724>)

The *Chiu* court relied in part on its own decision in *People v. Hart* (2009) 176 Cal.App.4th 662, 673. The two offenses in *Hart* were attempted robbery and willful, deliberate and premeditated attempted murder. The attempted robbery was the target offense, the intended crime. The nontarget offense was the attempted willful, deliberate and premeditated murder. At issue, in part, was whether the attempted willful, deliberate and premeditated murder was the natural and probable consequence of the attempted

6

robbery. *Hart* held the jury, in order to convict of attempted willful, deliberate and premeditated murder, must find that offense was the natural and probable consequence of the attempted robbery. *Hart* held the jury must be so instructed. (*Id.* at pp. 672-673.) Our Supreme Court disapproved *Hart* in *People v. Favor, supra,* 54 Cal.4th at pages 872, 875-880. Therefore, *Hart* is no longer an accurate statement of California law in the context of whether attempted robbery may serve as the basis for a willful, deliberate and premeditated attempted murder conviction.

Moreover, our Supreme Court rejected the present argument in the context of attempted murder in *People v. Favor, supra,* 54 Cal.4th at pages 871-872, 874-880. Defendant argues *Favor* was incorrectly decided. That issue is not one this court may decide. (*People v. Letner* (2010) 50 Cal.4th 99, 197-198; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Defendant further asserts *Favor,* which involved attempted murder, should not be extended to this case, which involves murder. As discussed below, we disagree. We conclude the jury was properly instructed. We follow the reasoning of: *People v. Lee* (2003) 31 Cal.4th 613, 616 (*Lee*), *People v. Cummins* (2005) 127 Cal.App.4th 667, 680-681 (*Cummins*) and *People v. Favor, supra,* 54 Cal.4th at pages 871-872, 874-880. We note defendant does not argue a necessarily included offense instruction should have been given. Therefore, we need not consider whether *People v. Woods* (1992) 8 Cal.App.4th 1570, 1586-1587, remains good law.

2. *Lee*

In *Lee, supra,* 31 Cal.4th at page 620, our Supreme Court considered, "[Whether the statute governing punishment for *attempted murder*, section 664, subdivision (a) (664(a))] requires that in order to be punished with life imprisonment for attempted murder as an aider and abettor, an individual must personally act with willfulness, deliberation, and premeditation." Section 664(a) mandates increased punishment for an attempted murder when it is willful, deliberate and premeditated. (*People v. Bright* (1996) 12 Cal.4th 652, 655-657, disapproved on another point in *People v. Seel* (2004) 34

7

Cal.4th 535, 550, fn.6; see *People v. Muhammad* (2007) 157 Cal.App.4th 484, 493.) Section 664(a) states in part: "[I]f the crime attempted is willful, deliberate, and premeditated murder as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole." In *Lee,* our Supreme Court noted that in section 664(a), the Legislature did not distinguish between a direct perpetrator and an aider and abettor. Our Supreme Court concluded therefore, "[S]ection 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor." (*Lee, supra,* 31 Cal.4th at p. 616; see also pp. 620-625.)

Lee did not involve the natural and probable consequences doctrine. Our Supreme Court noted in *dictum*, however: "Of course, where the natural-and-probable-consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational for the Legislature to limit [the increased punishment under] section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so." (*Lee, supra,* 31 Cal.4th at pp. 624-625.)

Lee also observed in relation to an attempted murderer's blameworthiness that punishment need not be "finely calibrated" to a criminal's mental state. (*Lee, supra,* 31 Cal.4th at p. 627.) The court stated: "Although defendants . . . argue that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is insufficiently blameworthy to be punished with life imprisonment, their argument . . . ignores the very substantial blameworthiness of even this sort of attempted murder—necessarily so in the general case, and possibly so even under the natural-and-probable-consequences doctrine. More fundamentally, defendants' argument seems predicated on an assumption that punishment must be finely calibrated to a criminal's mental state. Such an assumption is unsound. Punishment

8

takes account not only of the criminal's mental state, but also of his or her conduct, the consequences of such conduct, and the surrounding circumstances. [Citations.] Such circumstances may include the fact that the murder attempted was willful, deliberate, and premeditated." (*Ibid.*) In *People v. Favor, supra,* 54 Cal.4th at page 878, moreover, our Supreme Court subsequently observed: "[In *Lee*], we noted that even in the case of aiders and abettors under the natural and probable consequences doctrine, punishment need not be finely calibrated to the criminal's mens rea. It takes account of other valid penalogical considerations, such as the defendant's conduct, the consequences of such conduct, and the surrounding circumstances, including the fact that the murder attempted was willful, deliberate, and premeditated. (*Lee, supra,* 31 Cal.4th at p. 627.)"

### 3. *Cummins*

In *Cummins, supra,* 127 Cal.App.4th at pages 680-681, Division One of the Court of Appeal for this appellate district extended the analysis in *Lee* to the natural and probable consequences doctrine. The Court of Appeal considered a premeditated attempted murder conviction under the natural and probable consequences doctrine where the victim was pushed off a cliff. One defendant argued it was error not to inform the jury it had to find a *premeditated* attempted murder was a natural and probable consequence of robbery or carjacking. (*Id.* at p. 680.) The Court of Appeal disagreed: "We see no reason, under the facts of this case, to depart from the reasoning of the *Lee* court in a situation that applies the natural and probable consequences doctrine. As noted above, [defendant] was a willing and active participant in all the steps that led to the attempt on [the victim's] life. Although the evidence did not conclusively determine which defendant had physical contact with the victim when he was pushed, certainly [defendant's] conduct makes him no less blameworthy than [his coperpetrator]. The jury here was properly instructed on the elements of attempted premeditated murder and, based on the evidence, found the attempt on [the victim's] life was willful, deliberate, and premeditated. Nothing more was required." (*Id.* at pp. 680-681.)

## 4. *People v. Favor*

As noted above, in *People v. Favor, supra,* 54 Cal.4th at pages 871-872, 874-880, our Supreme Court resolved the conflict between *Cummins* and *Hart.* We have previously described the natural and probable consequence instructional error issue litigated in *Hart.* The issue was whether the target offense, attempted robbery, could serve as the basis for an attempted robbery and willful, deliberate and premeditated murder conviction. (*People v. Hart, supra,* 176 Cal.App.4th at p. 673.) In *Favor,* our Supreme Court followed *Cummins* and disapproved *Hart.* Our Supreme Court held: "[O]nce the jury finds an aider and abettor, in general or under the natural and probable consequences doctrine, has committed an attempted murder, it separately determines whether the attempted murder was willful, deliberate, and premeditated. [¶] Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*People v. Favor, supra,* 54 Cal.4th at pp. 879-880.)

## 5. Conclusion

The reasoning of the foregoing cases is applicable in the present context. A defendant may be guilty of murder as an aider and abettor even if he or she did not personally act willfully and with deliberation and premeditation. (See *People v. Favor, supra,* 54 Cal.4th at p. 877; *People v. Lee, supra,* 31 Cal.4th at p. 616.) An aider and abettor's liability does not require premeditation as a mental state. (See *People v. Favor, supra,* 54 Cal.4th at p. 877; *Lee, supra,* 31 Cal.4th at pp. 616-617.) As our Supreme Court discussed in *Lee*: "Although defendants . . . argue that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness,

10

deliberation, and premeditation, is insufficiently blameworthy to be punished with life imprisonment, their argument . . . ignores the very substantial blameworthiness of even this sort of attempted murderer—necessarily so in the general case, and possibly so even under the natural-and-probable-consequences doctrine. More fundamentally, defendants' argument seems predicated on an assumption that punishment must be finely calibrated to a criminal's mental state. Such an assumption is unsound. Punishment takes account not only the criminal's mental state, but also his or her conduct, the consequences of such conduct, and the surrounding circumstances. [Citation.] Such circumstances may include the fact that the murder attempted was willful, deliberate, and premeditated." (*Lee, supra,* 31 Cal.4th at p. 627.) Moreover, the nature of aider and abettor liability is derivative. The aider and abettor's liability attaches to the crime actually committed.

Here, the jury could find defendant, a member of a gang who detested African Americans, participated in a coordinated vicious assault on Mr. Le Blanc. Further, the jury could conclude the stabbing or shooting, the death inducing conduct, was perpetrated willfully, deliberately and with premeditation. If the jury found the foregoing, then defendant may be liable for Mr. Le Blanc's first degree murder on a natural and probable consequences theory. The degree of the murder committed, turning on the perpetrator's mental state, need not be a natural and probable consequence of the target crime. And this is because the degree of the murder relates only to punishment. The aider and abettor's mental state as it relates to the degree of the homicide is not in issue under the natural and probable consequences doctrine. The question is whether a reasonable person in the defendant's position should have foreseen that a murder might result. (*Lee, supra,* 31 Cal.4th at pp. 616, 620-627; *Cummins, supra,* 127 Cal.App.4th at pp. 680-681; *People v. Favor, supra,* 54 Cal.4th at pp. 871-872, 874-880.)

11

## C. The Willful, Deliberate And Premeditated Finding

Defendant argues the jury's first degree attempted murder finding must be reversed on evidentiary insufficiency grounds. Defendant reasons there is insufficient evidence he intended the willful, deliberate and premeditated murder of the victim. As discussed above, the jury was not required to find that defendant shared the actual perpetrator's mental state. Nor was the jury required to find that the *premeditated* attempted murder was a natural and probable consequence of the assault with force likely to cause great bodily injury. There is no merit to defendant's evidentiary sufficiency claim.

## IV. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P.J.

We concur:

MOSK, J.

KRIEGLER, J.

12